UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA-WESTERN DIVISION

| | |
|---|---|
| MARILYN CARDOZA, | ) CV 04-8603-SH |
| | ) |
| | ) MEMORANDUM DECISION |
| Plaintiff, | ) AND ORDER |
| v. | ) |
| | ) |
| JO ANNE B. BARNHART, Comm. | ) |
| Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq*. Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and both parties

have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

On April 16, 2001, Marilyn Cardoza filed an application for disability benefits alleging an inability to work due to back and leg pain, abdominal pain, visual impairment, hand numbness, and depression and anxiety. [Administrative Record ("AR") at 18, 123, 128] On July 10, 2003, after both a hearing and a supplemental hearing, an Administrative Law Judge ("ALJ") determined that the Plaintiff was not disabled within the meaning of the Social Security Act. [AR 18-22] The Plaintiff challenges that decision for five reasons.

The Plaintiff asserts that the ALJ erred (1) by improperly rejecting the findings and opinions of the Plaintiff's treating physician without providing "specific and legitimate" reasons for doing so, (2) in failing to include all of the Plaintiff's impairments in the hypothetical question posed to the vocational expert, (3) by failing to properly develop the record in regards to the medical advisor's testimony by allowing the medical expert ("ME") to be cross-examined via telephone, (4) in inappropriately discrediting the Plaintiff's testimony, and (5) by improperly analyzing the effect of the Plaintiff's obesity during the third and fifth steps of the sequential evaluation process.

## **Issue One**

Plaintiff argues that the ALJ erred in rejecting the opinion of her treating physician without providing "specific and legitimate" reasons for doing so. The court finds this argument to be without merit. A treating physician's opinion is not automatically granted controlling weight, and an ALJ does not have to accept a treating physician's opinion if it is brief and lacks clinical support. 20 C.F.R. § 416.927 (d)(2)-(3); Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). Furthermore, "the more consistent an opinion is with the record as a whole, the more weight" will be given to that opinion. 20 C.F.R. § 416.927(d)(4). However, the

ALJ must, in rejecting the opinion of a treating physician, "set forth specific, legitimate reasons," based on substantial evidence, for doing so. Sprague v. Bowen, 812 F.2d 1226, 1230-31 (9th Cir. 1987); Magallanes, 881 F.2d at 751; see also Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of . . . a treating physician." Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995). Still, the decision to reject a treating physician's opinion can be "based in part on the testimony of a non-examining medical advisor." Id. at 831. An ALJ's findings are adequate if the ALJ sets out a comprehensive and complete summary of the facts and contradictory medical evidence which support the ALJ's decision. See Magallanes, 881 F.2d at 751.

    In this case, the ALJ discussed the medical record in great detail. The ALJ discussed her medical records, physical exams (including MRI, EMG, radiological, x-ray, neurological), the opinion of the state agency medical consultant, the opinion of a consultive orthopedic evaluator, the opinion of an orthopedic expert, the results of two psychiatric evaluations, the opinion of a vocational expert, and the opinion of Plaintiff's treating physician. [AR 18-20]

    The ALJ first rejected the treating physician's opinion, in regard to his assessment of the Plaintiff in October 2001, based on the lack of "discussion of objective findings or physical examination of the claimant." [AR 19] As correctly stated by the ALJ, the treating physician only made one medical diagnosis, that of carpal tunnel syndrome- though he mentioned lower back pain [AR 382]- yet he stated that the Plaintiff was severely limited in her ability to stoop, kneel, and crouch [AR 383.] No objective medical evidence was referred to as the basis for any of these findings.

    The ALJ later rejected the treating physician's more recent residual functional capacity ("RFC") assessment stating that it was rejected "for the same reasons his earlier assessment was rejected." [AR 19] Several times during the assessment the

treating physician either states "see report" or leaves the answer blank, even when asked what clinical findings support his assertions. [AR 418, 419] And, although the attached report mentions a variety of clinical evidence, it does not specifically connect any of this evidence to the RFC assessment. [AR 424-29] In addition, the report makes comments without providing any objective support for them. [See AR 426 (stating that the Plaintiff has a "well documented history of requiring assistance to perform her own activities of daily living as well as with the responsibilities of caring for her young children," and that she "sustained [a] fracture to the distal phalynx of her right middle finger," but failing to mention any documentation or objective clinical support for these assertions)]  The treating physician also exaggerated some of the clinical findings. For example, he stated that the EMG shows "overwhelming evidence of a neurological injury," [AR 507,] however the EMG results, while showing some positive results, were not severe, let alone striking [AR 386-87.] The bulk of the medical evidence also refutes the treating physician's assertion that the Plaintiff needs an electric wheelchair for ambulation. [AR 429] Multiple medical examiners noted that an ambulatory device was not necessary because the Plaintiff was not only able to walk without aid, but had shown up at medical examinations without her cane or walker. [AR 101, 374, 377, 380] In addition, though not stated by the ALJ, the treating physician's opinion is not only inconsistent with the record as a whole, but it is also internally inconsistent. A month prior to writing the final RFC assessment, the Plaintiff's treating physician had written a less restrictive assessment. The first assessment listed the average job disruption caused by Plaintiff's limitations at 80 hours per month, [AR 414,] but that number jumped to 160 hours per month by the second assessment, despite the absence of any mention of a degenerative condition [AR 416.]

      The ALJ rejected the treating physician's opinion because it was "unsupported by any discussion of objective findings and . . . refuted by the weight of the medical evidence." [AR 19] The decision then goes on to list specific and

legitimate findings in support of this conclusion. In addition, while the ALJ does embrace the opinion of the ME, this was not the sole reason for the ALJ rejecting the treating physician's opinion. The main reason was the significant amount of medical evidence, and the multiple opinions of examining physicians which contradicted the opinion of the treating physician, the only doctor who found that the Plaintiff was unable to perform even sedentary work.

After rejecting the treating physician's opinion, the ALJ goes on to list the medical evidence that contradicts the treating physician's assertions. The Plaintiff's treating doctor is the only physician who stated the Plaintiff was unable to perform even sedentary work. [AR 429] The orthopedic expert, the state agency medical consultant, and the orthopedic consultant all found that the Plaintiff was able to perform light work, despite her impairments. [AR 366-75, 379-80, 473-74] Thus, the ALJ did not err in rejecting the treating physician's opinion.

### Issue Two

The Plaintiff alleges that the ALJ erred by failing to include all of her impairments in the hypothetical question which was posed to the vocational expert, specifically that the ALJ framed the hypothetical solely on two of the medical experts' answers to interrogatories, and that the ALJ failed to include impairments caused by the medications Plaintiff was taking.

The court agrees with the Defendant that the ALJ included all of the Plaintiff's limitations that were supported by the record. The Ninth Circuit has held that "[h]ypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant..." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). However, the record must support these limitations and restrictions. Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989). In Magallanes, the ALJ rejected the limitations presented by the Plaintiff's counsel and elected instead to base his hypothetical question on the testimony of another doctor.

Id. "The limitation of evidence in a hypothetical question is objectionable 'only if the assumed facts could not be supported by the record.' [citations omitted]" Id. at 757.

The ALJ, as in Magallanes, decided to base his hypothetical not on the treating physician's analysis of the Plaintiff's functional capacity, but on that of another doctor. The reason that the ALJ chose not to base his hypothetical on the opinion of the treating physician, was simply, (as discussed more in depth above in Issue One), that the treating physician's assertions were not supported by objective medical evidence. In contrast, the limitations contained in the hypothetical posed by the ALJ were rationally and reasonably supported by the medical evidence in the record.

The ALJ based his hypothetical directly on the limitations stated by the two MEs. The MEs had access to all of the Plaintiff's medical records, and both MEs reviewed all of these records before rendering a decision on her RFC. These documents included the Plaintiff's extensive ER records, the evaluation of the state agency medical consultant, the assessment of a consultive orthopedic evaluator, the evaluations of a psychiatrist, the opinions and notes of her treating physician, as well as extensive laboratory test results.

The Plaintiff particularly focuses on the fact that Dr. Gurvey was unable to answer whether the car accident the Plaintiff was in at the start of 2002 altered her RFC, and also that he stated that he did not know what the Plaintiff's RFC was in 1983. [AR 113-14] However, the MRI, EMG, and a significant portion of the medical records that Dr. Gurvey examined were all post-accident. Thus, what her RFC was before the accident, and how it might have changed, was irrelevant to the formation of his opinion about her current RFC. Furthermore, there were no detailed records about the Plaintiff's condition directly after her accident in 1983, nor was the Plaintiff claiming a disability at that time, so there was no reason for Dr. Gurvey to assess her RFC in 1983. [AR 112, 425]

Additionally, the Plaintiff claims that the ALJ should have included all the impairments listed by Dr. Gurvey in his interrogatory responses, and therefore erred by not including the impairing side effects of her medications. [AR 475] However, neither the Plaintiff, nor her treating physician, presented any evidence that the medication she was taking resulted in disabling side effects. The Plaintiff even stated at the first administrative hearing that she did not suffer from any medication side effects. [AR 60-61] Therefore, the ALJ did not err in framing the hypothetical, because he included all of the Plaintiff's limitations that were supported by the record.

## Issue Three

The Plaintiff also asserts that the ALJ erred by improperly developing and clarifying the testimony of the ME, Dr. Gurvey, in part, because the ALJ allowed him to be cross-examined telephonically. The Court rejects the Plaintiff's claim.

After the first administrative hearing, the ALJ determined that the record was not complete enough for him to render a decision. He requested that an orthopedic ME be consulted. [AR 62] In addition, the ALJ agreed with the Plaintiff's request to delay sending the current record to the ME, in order to wait for more documents from her treating physician. [AR 63-65] The orthopedic ME, Dr. Gurvey, was given the complete record and a set of interrogatories to answer in writing before the commencement of the supplemental hearing. [AR 70, 470-75] However, Dr. Gurvey was unable to attend the supplemental hearing and was cross-examined telephonically. [AR 70-74, 80-117]

There is no indication whether the ALJ ever checked to make sure that the ME had all the exhibits, nor does the record show that the ALJ summarized the Plaintiff's testimony from the previous hearing. During cross-examination, it was discovered that Dr. Gurvey no longer had a copy of two of the exhibits, namely 16-F, his answers to the interrogatories, and 13-F, a letter from the treating physician.

[AR 82, 106] While HALLEX I-2-5-39, (the Hearing, Appeals and Litigation Law Manual), requires an ALJ to make sure that the ME has all the exhibits, as well as to summarize the plaintiff's testimony if the ME was not present for it, this is not required by law. See Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000). In addition, while HALLEX specifies a preference for the in-person appearance of an ME, HALLEX is not the law and is not legally binding on an ALJ. Id.

    Although the ALJ should have checked with Dr. Gurvey to make sure he was in possession of all the exhibits, it does not appear that Dr. Gurvey's loss of these records seriously affected his testimony or prejudiced the Plaintiff's case. Even though Dr. Gurvey did not have his own answers to the interrogatories, he was able to review his answers through both his notes and by having his answers read to him. [AR 82] And, while exhibit 13-F contained information not penned by the testifying witness, it is clear from the hearing transcripts that Dr. Gurvey had taken extensive notes on the exhibit and had incorporated them into the formation of his opinion about the Plaintiff's medical condition. [AR 86, 89, 100, 102, 106-107, 112, 116]

    The Plaintiff further argues that the ALJ should have either subpoenaed Dr. Gurvey to appear in court or appointed another ME, and that failure to do so prevented the full and fair development of the record. In support of this argument, the Plaintiff cites to Solis v. Schweiker. The court in Solis held that when the physician is a crucial witness and his findings "substantially contradict the other medical testimony", and that when "interrogatories are an inadequate substitute for cross-examination, the claimant has been denied procedural due process if his request to subpoena the physician is not granted." 719 F.2d 301, 301 (9th Cir. 1983).

    However, the Plaintiff is incorrect in asserting that Solis is analogous to this case. Dr. Gurvey's testimony did not substantially contradict the other medical testimony, and interrogatories were not substituted for "live" cross-examination. While it is clear that some confusion might arise from a telephonic cross-

examination, the ALJ is not legally required to demand that the ME make an in-person appearance for cross-examination. An ALJ retains the discretion to set the procedures of the hearing, as long as it is of such a "nature as to afford the parties a reasonable opportunity for a fair hearing. [citations omitted]" Richardson v. Perales, 402 U.S. 389, 400 (1971). Additionally, the general tone of a SSI hearing is informal, Id. at 406, and the claimant is entitled to a cross-examination that allows for a "full and true disclosure of the facts." 5 U.S.C. § 556(d).

The Plaintiff had an opportunity to cross-examine Dr. Gurvey in depth and for an extended period of time. Despite being telephonic, this amounted to a full and true disclosure of the facts and opinions, and afforded the Plaintiff a reasonable opportunity for a fair hearing. It is also relevant to assess the burden that would be imposed on the system by forcing all medical advisors and experts to appear in person for all SSI hearings. Not only would the cost of traveling expenses and expert fees rise, but it is also likely that fewer physicians would be willing to provide their expertise if they always had to appear in person. See Flatford v. Chater, 93 F.3d 1296, 1306 (6th Cir. 1996).

### Issue Four

The Plaintiff alleges that the ALJ erred in finding her testimony not credible because the ALJ did not give clear, convincing, and specific reasons for doing so. The determination of credibility is the province of the ALJ, and as long as it is supported by substantial evidence, the decision should not be second-guessed. Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). An ALJ is required to give clear and convincing reasons for rejecting a claimant's pain testimony, unless there is affirmative evidence showing that the claimant is malingering. Burch v. Barnhart 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ stated two reasons for finding that the Plaintiff was not credible. First, that there was a lack of significant objective physical or mental health findings, and second that it had been suggested that her

complaints were somatic and that she "was exaggerating or malingering." [AR 20]

An ALJ may consider the lack of objective medical evidence supporting an allegation of excess pain as a factor towards discounting pain testimony. Burch, 400 F.3d at 681. But this was not the sole reason for rejecting the Plaintiff's testimony. The ALJ based his decision primarily on affirmative evidence that the Plaintiff was malingering [AR 20], at which point the ALJ no longer had to specify clear and convincing reasons for rejecting her testimony.

The ALJ's decision to reject the Plaintiff's testimony is supported by affirmative evidence that the Plaintiff was malingering. Dr. Lunianski, who performed a psychiatric evaluation, stated that her alleged pain could be attributable to malingering. [AR 493] In addition, the Plaintiff's extensive ER records include multiple comments that the Plaintiff was malingering or exaggerating her symptoms in order to gain access to painkillers, and that she may have been abusing these medications. [AR 216, 228, 231, 238, 248, 253, 257, 262, 292, 302, 306, 310-311] And, although her treating doctor stated that the Plaintiff has judiciously used her pain medication in the past, [AR 427], this comment is not only contradicted by the ER reports, but also by a letter from the Plaintiff's previous treating physician which related that the Plaintiff had been receiving duplicate prescriptions from more than one doctor [AR 390-391]. In addition, the Plaintiff did not present any evidence to support her excess pain allegation beyond her own testimony. No lay witnesses were called to corroborate her claims, and the majority of the medical evidence stated that her pain was not so severe as to be completely disabling. Based on this evidence, the ALJ's interpretation that the Plaintiff was malingering was both rational and reasonable, and the ALJ did not err in finding the Plaintiff not credible.

## **Issue Five**

Plaintiff contends that the ALJ erred by improperly analyzing the effects of

her obesity during steps three and five of the sequential analysis. Yet, the Plaintiff has not established that her obesity limits or exacerbates her impairments in any way. Although obesity is a factor that can be considered in both an equivalency determination and in determining a claimant's ability to work, an ALJ is not required to explore this issue in all situations. See Celaya v. Halter, 332 F.3d 1177, 1181-82 (9th Cir. 2003); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (stating that "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence.")

In the present case, even though the ALJ did not specifically mention the Plaintiff's obesity in his decision, this is not a reversible error. The Plaintiff did not present any evidence, or theory, that her obesity limited her ability to function. Nor was any evidence presented, explicitly or implicitly, that her obesity exacerbated her impairments to such a degree that in combination with the other impairments it equaled a listed impairment. Obesity was never listed as one of the Plaintiff's symptoms or complaints. Additionally, while the Plaintiff's obesity, or rather height and weight, is mentioned occasionally in the record, there is no medical evidence that her obesity affected her functional abilities. [AR 82, 377, 428, 470] Moreover, the Plaintiff had the benefit of experienced counsel and did not need to be guided through the process by the ALJ. Therefore, the ALJ was not required to discuss her obesity during the third or fifth step of the sequential analysis because the record did not warrant such an analysis.

## CONCLUSION AND ORDER

In accordance with the foregoing, the decision of the Commissioner is affirmed.

DATED: October 25, 2005

_____/S/_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE